UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JADE APPAREL, INC.,                                    :

                                    Plaintiff,         :

                -against-                              :          **MEMORANDUM AND ORDER**

STEVEN SCHOR, INC. d/b/a SPRING STREET,   :          11 Civ. 2955 (KNF)
STUART SCHOR, and STEVEN BEHAR,
                                                      :
                                    Defendants.
-------------------------------------------------------------X
STEVEN SCHOR, INC. d/b/a SPRING STREET,   :
STUART SCHOR, and STEVEN BEHAR,
                                                      :
                                    Counter Claimants, :

                -against-                              :

                                                      :
JADE APPAREL, INC.,
                                                      :
                                    Counter Defendant.
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

   Jade Apparel, Inc. ("Jade") commenced this action for damages alleging breach of

fiduciary duty against defendants Stuart Schor ("Schor") and Steven Behar ("Behar") and breach

of contract and various state law claims against all defendants.  The defendants made

counterclaims for damages and injunctive relief, alleging: (1) breach of contract; (2) trademark

infringement under the Lanham Act, 15 U.S.C. § 1125(a); (3) common law unfair competition;

(4) deceptive acts and practices under New York General Business Law ("GBL") § 349; (5) a

violation of "New York General Business Law § 368(d)"[1]; (6) conversion; and (7) unjust

---

[1] Although the defendants asserted a violation of "New York General Business Law §
                                                                            (continued...)

1

enrichment.  Before the Court are: (i) the defendants' motion, pursuant to Rule 56 of the Federal

Rules of Civil Procedure, for partial summary judgment on the plaintiff's claim for breach of

fiduciary duty against Schor and Behar in their individual capacities; and (ii) the plaintiff's

cross-motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil

Procedure, on all counterclaims, except breach of contract.

## UNDISPUTED FACTS

The following facts are undisputed:

Jade produces clothing for sale to retail shops, mainly knitwear.  Since 1983, Steven

Schor, Inc. d/b/a Spring Street ("Spring Street") had been a wholesale manufacturer of women's

clothing, primarily woven skirts and pants, under the trade name "Spring Street."  Spring Street

produced clothing for sale to retail shops and did not sell directly to the public.

In 2008, Schor and Liza Diuro ("Diuro") discussed the possibility of Spring Street selling

the clothing line that Diuro was developing for Jade.  After negotiations between Schor and Joe

Cho ("Cho"), Jade's CEO, president and sole owner, Jade entered into an oral agreement ("the

2008 agreement") with Spring Street concerning the sale of Jade-manufactured products to

Spring Street's existing retail customers.  Jade and Spring Street agreed that, after reimbursing

Jade for the costs of manufacturing the clothing, Spring Street would retain thirty percent of the

profits from Spring Street's sale of Jade-manufactured products, while Jade would receive

seventy percent of the profits.  Cho negotiated, exclusively, the material terms of the agreement

with Spring Street, on behalf of Jade.  Jade and Spring Street agreed to share the costs of

---

[1](...continued)
368(d)," alleging injury to business reputation and mark dilution, that section of the statute was
repealed, effective January 1, 1997, and replaced by New York General Business Law § 360-l.

showroom space and the salary for certain employees.  Jade undertook no responsibility or

obligation with respect to any economic losses sustained under the 2008 agreement between Jade

and Spring Street.  No agreement existed between Jade and either of the individual defendants,

and the individual defendants made no commitment or promise to be liable personally for any

losses under the 2008 agreement.

In addition to its sale of Jade's products, Spring Street continued to manufacture and sell

its own separate clothing line.  Sometime in 2010, Spring Street experienced financial

difficulties, fell behind in its payments and, in October 2010, stopped paying Jade, although it

owed Jade a substantial amount of money for goods sold by Spring Street and manufactured and

shipped by Jade to retailers.  In October 2010, Behar and Schor told Cho that they were having

problems because Capital Business Credit, Spring Street's insurer, was being very strict, and

they could not pay Jade because they had to pay their other suppliers in order to stay in business.

When Spring Street stopped paying Jade, Jade refused to accept any additional orders from

Spring Street for Jade products.

Schor and Behar decided to surrender certain accounts to Jade and, in that connection,

Schor assigned the payment of certain invoices to Jade.  Schor transferred to Jade whatever

rights Spring Street had to certain accounts to protect Jade.  On April 25, 2011, Schor told

Stephanie Cooper ("Cooper") and April Ginacopolis, two Spring Street salespersons who

worked at the showroom, that Spring Street was closing and that he could no longer pay them.

On April 27, 2011, Schor's son, Matthew Schor, who worked for Spring Street, Gina Beck, a

Spring Street employee and two employees from A.B.N., Inc., Schor's new employer, removed

Spring Street's samples, supplies, business records and other papers from the showroom space it

shared with Jade.

Spring Street ceased operation on April 29, 2011.  Shortly after Spring Street ceased operation and vacated the showroom, Jade changed the entry code for the lock on the showroom. At no time after that did Spring Street seek permission from Jade to enter the premises or to remove any other items from the showroom.  Since Spring Street ceased operating, Schor has been employed by A.B.N., Inc. as a commissioned salesman selling women's apparel, and Behar has obtained his real estate license, but was unemployed at the time of the motion.

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiff's claim for breach of fiduciary duty alleges, in pertinent part:

> Schor and Behar, as officers of Spring Street and members of the joint venture, owed Jade Apparel a fiduciary duty to promote the common interests of the joint venture, and to account properly for, and transfer, funds received from sales of Jade Apparel's knitwear. . . . Schor and Behar breached their fiduciary duty to Jade Apparel by failing to properly account for and transfer to Jade Apparel money received from sales of Jade Apparel's knitwear. . . . Upon information and belief, defendants Schor and Behar further breached their fiduciary duty to Jade Apparel by improperly diverting cash from Spring Street and the joint venture, and by improperly using corporate assets and credit cards to pay for personal expenses.

***Defendants' Contentions***

The defendants contend that the plaintiff's claim for breach of fiduciary duty against the individual defendants, based on the alleged joint venture, must fail as a matter of law because no joint venture existed between Jade and the individual defendants, since: (a) no agreement existed between Jade and the individual defendants with respect to sharing responsibility for economic losses; and (b) Jade undertook no responsibility with respect to any losses under the 2008 agreement that would give rise to a fiduciary duty on the part of the individual defendants. According to the defendants, no fiduciary duty existed that the individual defendants could have breached.

4

***Plaintiff's Contentions***

The plaintiff contends that the defendants' motion should be denied because, "[a]lthough it is undisputed that Jade and [Spring Street] entered into an oral agreement whereby Defendants agreed to sell knitwear designed and manufactured by Jade in return for thirty percent of the profits, there are significant disputed issues of facts concerning the scope and terms of that oral agreement." The plaintiff maintains, <u>inter alia</u>:

> There was also evidence that factor fees and any discounts or markdowns that the customer took were deducted from the profit. . . . In addition, the evidence establishes that [Spring Street] and Jade agreed to share the costs of showroom space and certain employees [,] that Jade and [Spring Street] agreed that [Spring Street's] sales of Jade's product would be insured by [Spring Street's] factor, and that [Spring Street] set up its finances to handle the sales of Jade's product separately from the rest of its business, including a sub-account with [Spring Street's] factor to handle the sales of Jade's product[,] and a separate bank account.

Moreover, the plaintiff contends, since Spring Street's "sales of Jade's product would be insured by Capital, . . . minimal losses were anticipated," and "Schor testified that Jade knew that if [Spring Street] factored the sales of Jade's product through Capital, Jade was 'taking exposure' of potential losses." According to the plaintiff, the undisputed evidence "is, at minimum, sufficient to raise an issue of fact as to whether a joint venture existed between the parties" and "whether the parties agreed to share some, if not, all of the losses."

***Defendants' Reply***

The defendants contend that in its opposition to the motion the plaintiff "attempts to create a false equivalence between an express agreement to share the burden of economic losses (required to create a partnership or joint venture) and the fact that fees, rental expenses, salaries, discounts, allowances and markdowns were all factors in determining the amount of profit shared by Jade and [Spring Street]." According to the defendants, "those things, cited by Jade,

are simply not the same thing as an express agreement, which is mandatory between parties to a

joint venture, to share the burden of economic losses."

## *Discussion*

### *Summary Judgment Legal Standard*

A motion for summary judgment should be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56 (a). A fact is "material" if it "might affect the outcome of the suit under

the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510

(1986). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Id.

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by: (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or (B) showing that the materials cited do not
> establish the absence or presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

> Fed. R. Civ. P. 56(c)(1).

In determining whether a genuine issue as to any material fact exists, a "district court is required

to resolve all ambiguities and draw all factual inferences in favor of the party against whom

summary judgment is sought." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000).

Additionally, "the court is not entitled to weigh the evidence" and "if there is any evidence in the

record from any source from which a reasonable inference could be drawn in favor of the

nonmoving party, summary judgment is improper." Id.

### *New York Breach of Fiduciary Duty Involving Joint Venture*

To recover damages for a breach of fiduciary duty under New York law, a plaintiff must

establish: (1) the existence of a fiduciary relationship; (2) misconduct by the fiduciary; and (3) damages caused directly by the fiduciary's misconduct. See Kurtzman v. Bergstol, 40 A.D.3d 588, 590, 835 N.Y.S.2d 644, 646 (App. Div. 2d Dep't 2007). The plaintiff alleged that Schor and Behar owed it a fiduciary duty "as officers of Spring Street and members of the joint venture." Thus, to establish the first element of the plaintiff's breach of fiduciary cause of action, the plaintiff must demonstrate the existence of a joint venture.

A joint venture is a partnership for a limited purpose and is governed by the same principles as a partnership. See Gramercy Equities Corp. v. Dumont, 72 N.Y.2d 560, 565, 534 N.Y.S.2d 908, 911 (1988). In determining the existence of a joint venture, courts consider the following:

> whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interests of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their joint benefit. . . . [I]t is not enough that two parties have agreed together to act in concert to achieve some stated economic objective. Such agreement, by itself, creates no more than a contractual obligation . . . . The fiduciary obligation arises upon the coagulation of property, profits or other interests which the parties can then be said to hold jointly and which are made accessible to each other in terms of the confidential relationship which exists between joint associates.

> Steinbeck v. Gerosa, 4 N.Y.2d 302, 317-18, 175 N.Y.S.2d 1, 13-14 (1958) (internal quotation marks and citations omitted).

The essential element of a joint venture

> is a mutual promise or undertaking of the parties to share in the profits of the business and submit to the burden of making good the losses. An agreement to distribute the proceeds of an enterprise upon a percentage basis does not give rise to a joint venture if the enterprise does not represent a joinder of property, skills and risks.

> Id. at 317, 175 N.Y.S.2d at 13 (internal citation omitted).

7

The defendants' Local Civil Rule 56.1 statement No. 6, that "Jade undertook no responsibility or obligation with respect to any economic losses sustained as a result of the contractual relationship between Jade and [Spring Street]" is supported by competent evidence and not refuted by the plaintiff.  It is undisputed that Cho negotiated, exclusively, on behalf of Jade, the 2008 agreement with Spring Street.  When asked, during his deposition, "were there any discussions with Mr. Schor during that initial phone conversation about, if there were any losses, how they would be shared?", Cho replied "No."  Cho also testified that Spring Street would owe Jade money even if Spring Street failed to receive payments from the retail outlets for the Jade products shipped to them, "because they're responsible for it."

In response to the defendants' Local Civil Rule 56.1 statement No. 6, the plaintiff stated:

> Disputed.  Jade and [Spring Street] agreed that the proceeds of any sale would be offset by charge-backs and other costs.  Furthermore, Jade and [Spring Street] agreed that [Spring Street's] sales of Jade's product would be insured by [Spring Street's] factor, Capital Business Credit, and, therefore, no losses were anticipated. . . . Schor testified that Jade knew that if [Spring Street] factored the sales of Jade's product through Capital Business Credit, Jade was "taking exposure" of potential losses . . . . In fact, Diuro made several efforts to collect money owed by Ashley Stuart, a retailer that went bankrupt, for sales made by [Spring Street] of Jade product. . . . In addition, factor fees and any discounts, allowances or markdowns taken by the customer were calculated by Behar and deducted from the gross profits.

Nothing in the plaintiff's response to the defendants' Local Civil Rule 56.1 statement No. 6 speaks to sharing losses, let alone any agreement between the parties to share losses.  How the proceeds would be offset and the sales would be insured does not say anything about the existence of an agreement to share losses.  Similarly, neither Schor's testimony that Jade knew it was "taking exposure" nor Diuro's efforts to collect a payment owed by a retailer relates to the existence of an agreement to share losses.  Moreover, the plaintiff takes inconsistent positions when, in response to the defendants' Local Civil Rule 56.1 statement No. 6, it states that "no

8

losses were anticipated" because Jade's product was insured by Spring Street's factor, Capital Business Credit, but in its memorandum of law, citing to the same evidence, it contends that "minimal losses were anticipated" as a result of that insurance.

Regardless of this inconsistency, whether and to what extent losses were anticipated by the parties does not address whether an agreement to share losses existed. On the contrary, the defendants' evidence establishes that sharing losses was not discussed when the 2008 agreement was formed. While it is disputed whether the only material term of the 2008 agreement was, as the defendants contend in their Local Civil Rule 56.1 statement No. 4, "that, after reimbursing Jade for the costs of manufacturing the items of clothing, [Spring Street] would retain thirty (30%) percent of the profits from the sale of Jade-manufactured products," the plaintiff's response to that statement did not mention sharing losses or anything else that would permit the Court to infer that sharing losses may have been discussed during the negotiations over the 2008 agreement, or that sharing losses may have been one of the material terms of the 2008 agreement. Furthermore, the record before the Court does not contain any competent evidence establishing or providing a basis upon which to infer that sharing losses was a term of the 2008 agreement.

Based on the undisputed evidence that sharing losses was not discussed in the 2008 agreement, and that Jade did not intend to partake in any losses from Spring Street's sales of Jade products to retailers, no agreement to share losses existed between the parties to the 2008 agreement. Since the defendants established that it is undisputed that the 2008 agreement did not contain any provision for sharing losses, the plaintiff's breach of fiduciary duty cause of action, based on the joint venture, fails as a matter of law because the plaintiff cannot establish that the defendants owed a fiduciary duty to it. Accordingly, granting the defendants' partial

9

summary judgment motion is warranted.

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

The defendants counterclaimed alleging: (a) trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a); (b) common law unfair competition; (c) deceptive acts and practices under GBL § 349; (d) injury to business reputation and dilution under GBL § 360-l; and (e) conversion.

### *Plaintiff's Contentions*

The plaintiff contends that the Lanham Act trademark infringement counterclaim should be dismissed because Spring Street "abandoned its use of the Spring Street mark when it ceased to use the mark and went out of business on April 29, 2011."  According to the plaintiff, the unregistered mark "Spring Street" is not inherently distinctive because it "is a geographic term, designating a location in New York well-known for its affiliation with the garment industry." Moreover, the plaintiff asserts, Spring Street cannot show that the mark acquired a secondary meaning in the minds of consumers because it "produced no evidence of advertising expenditures, consumer studies, or unsolicited media coverage," and it "did not sell directly to the public but to retail stores, under both its own label and under store labels."  Furthermore, the plaintiff contends, Spring Street has "no evidence that Jade used the Spring Street mark without [Spring Street's] permission," since Schor testified that he and Behar "made a decision to turn over to Jade certain accounts" and "assigned the payment of certain invoices to Jade."  The plaintiff maintains that, "[b]ecause the undisputed evidence shows that [Spring Street] cannot prove its Lanham Act claim, summary judgment dismissing its second counterclaim should be granted," and common law unfair and GBL § 360-l counterclaims should be dismissed for the same reasons, since an unfair competition counterclaim "under New York law shares most of the

10

same elements as a claim for trademark infringement under the Lanham Act."

The plaintiff contends the defendants' counterclaim for deceptive acts and practices must be dismissed because neither Jade not Spring Street sold to the public directly and Jade sells only to retailers.  Thus, the defendants "cannot prove that Jade's conduct is 'consumer-oriented' or has a 'broader impact on consumers at large.'"  Since, according to the plaintiff, the defendants do not allege and cannot prove any injury to the public, their deceptive acts and practices counterclaim must fail as a matter of law.

With respect to the conversion counterclaim, the plaintiff contends it must fail because it is "based upon alleged control of the showroom and [Spring Street's] retail accounts" and not on identifiable tangible property.  Moreover, the plaintiff asserts, Spring Street "removed its samples and the rest of its property from the showroom on April 27 and 28, 2011," and "went out of business on April 29, 2011," after which "Jade changed the lock on the showroom."  The plaintiff maintains that it did not employ Spring Street's salespersons until after Spring Street terminated their employment.  Similarly, no evidence exists that Jade made any sales using Spring Street's samples.  The plaintiff contends that, since the defendants cannot show that they "had legal ownership or an immediate superior right of possession to a specific identifiable thing or that Jade exercised an unauthorized dominion over [Spring Street's] property to the exclusion of the [Spring Street's] rights," their conversion counterclaim must be dismissed.

The plaintiff contends that the defendants' counterclaim for unjust enrichment must be dismissed as duplicative of their breach of contract counterclaim because it is undisputed that a valid and enforceable oral agreement existed between the parties.  Additionally, the undisputed evidence shows that Spring Street removed its samples and property from the showroom on April 27 and 28, 2011, and no evidence exists to show that Jade made any sales using Spring

11

Street's samples; thus no benefit could have been conferred on Jade at Spring Street's expense.

***Defendants' Contentions***

The defendants contend summary judgment is not appropriate because material questions of fact with respect to their counterclaims exist. According to the defendants, Jade failed to establish that "Spring Street" was an invalid mark, since Schor testified that Spring Street used it continuously since 1983 until April 2011, and that no determination has been made to this day respecting whether the mark will be used again or sold to a third party. Thus, material questions of fact exist about the validity of the "Spring Street" mark. Moreover, whether Spring Street abandoned the "Spring Street" mark and at what point is also a question of material fact because Schor testified that Spring Street had not abandoned the mark in April 2011 or assigned any rights to that mark to Jade. According to the defendants, since Jade failed to provide evidence that it stopped using the Spring Street mark after April 2011, or that it ever had permission to use that mark after Spring Street suspended its operations, summary judgment is inappropriate.

Furthermore, the defendants maintain, issues of material fact exist with respect to the unfair competition, deceptive acts and trademark dilution counterclaims "where there is a question as to Jade's bad faith in utilizing the mark after April 2011." Similarly, summary judgment with respect to the dilution counterclaim is premature, "given the fact that there is still a question as to the existence of secondary meaning and distinctiveness of the 'Spring Street mark and whether Jade acted deceptively or in a predatory capacity by using the mark without authorization."

The defendants contend that their conversion counterclaim cannot be dismissed because the plaintiff relies on the testimony of its employee, Cooper, that Spring Street "retrieved all of [its] samples and materials prior to being locked out of the jointly controlled showroom in

2011." However, according to the defendants, Schor testified "that Jade improperly converted [Spring Street's] woven samples to develop . . . a line of wovens [sic] that contradicts the testimony of Liza Diuro." Thus, Spring Street should have an opportunity to challenge Cooper's credibility and present evidence at trial on this point.

The defendants maintain that the plaintiff's "un-noticed portion of [its] cross-motion for summary judgment seeking dismissal of [Spring Street's] seventh counterclaim for unjust enrichment" should be denied, "since there remain material questions of fact as to whether equity and good conscience require Jade to compensate [Spring Street] for the unjust effective takeover of [Spring Street's] operations without compensation." The defendants contend that their unjust enrichment counterclaim "goes beyond its first counterclaim for simple breach of a profit sharing agreement with Jade," since it alleges that "Jade retained samples, photographs, servers, customer information and other property belonging to [Spring Street] for use in the takeover of [Spring Street's] business to the economic benefit of Jade."

***Plaintiff's Reply***

The plaintiff contends that counterclaims for trademark infringement and unfair competition must be dismissed because the defendants cannot establish the validity of the mark and it is undisputed that Spring Street stopped using the "Spring Street" name "when it shut down its business in April 2011." Moreover, no evidence exists that the "Spring Street" mark acquired secondary meaning or was used by Jade without Spring Street's permission. According to the plaintiff, Schor's statement that Spring Street still exists as a legal entity and it may use its "Spring Street" name in the future is conclusory and speculative, and insufficient to create an issue of fact concerning Spring Street's abandonment of its mark.

The plaintiff contends that the defendants did not submit any law or evidence in response

13

to the plaintiff's argument that their counterclaim for deceptive acts and practices should be dismissed.  Similarly, the defendants did not offer any response to Jade's argument that their conversion counterclaim "must be dismissed to the extent it is based upon Jade's alleged control of the showroom and [Spring Street's] retail accounts because the subject matter of a conversion action must be tangible *personal* property."  The defendants offered no evidence regarding any samples or other tangible property that Jade is alleged to have retained improperly, and Schor's speculation that in his opinion, the plaintiff "simply could not have developed this line of woven products in such a short time without having improperly used [Spring Street's] samples," is insufficient to defeat the plaintiff's summary judgment motion.  The plaintiff contends that the unjust enrichment counterclaim must be dismissed because its essence is "that Jade failed to properly credit [Spring Street] for sales made using the Spring Street name or [Spring Street's] samples.  According to the plaintiff, the only evidence submitted of any such sales are sales that were made while [Spring Street] was still operating," and these claims are governed by the oral contract between the plaintiff and Spring Street.

### *Discussion*

The summary judgment legal standard is explained above and will not be repeated here.

### *The Lanham Act Counterclaim*

The Lanham Act prohibits the infringement of unregistered common law trademarks. See Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76, 77-78 (2d Cir. 1981); 15 U.S.C. § 1125(a)(1).  To prevail on an unregistered trademark infringement claim under the Lanham Act, a plaintiff must establish that: (1) it has a valid mark entitled to statutory protection; and (2) the defendant's use of the allegedly infringing mark is likely to cause consumer confusion about the origin or sponsorship of the defendant's goods with the plaintiff's goods.  See Starbucks Corp. v.

14

Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009).

"The central consideration in assessing a mark's protectability, namely its degree of distinctiveness, is also a factor in determining likelihood of confusion." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006). "The strength, or distinctiveness, of a mark is its power to identify the source of a product." Time, Inc. v. Petersen Publ'g Co.,, 173 F.3d 113, 117 (2d Cir. 1999). Trademarks are classified as "generic, descriptive, suggestive, and arbitrary or fanciful"; those of the generic type are not entitled to protection, while the other three may be. Id. at 118.

> Suggestive and arbitrary or fanciful marks are considered to be inherently distinctive, and therefore always satisfy the first prong of the test for Lanham Act § 43(a) trademark protection. If a mark is descriptive, however, the plaintiff must establish that it has acquired secondary meaning in order to become distinctive and thereby satisfy the first prong of Lanham Act trademark analysis. Generic marks are never protectable. In classifying a trademark . . . a court examines the context in which the words constituting the mark are used.
>
> Paddington Corp. v. Attiki Importers & Distributors, Inc., 996 F.2d 577, 583 (2d Cir. 1993).

In determining whether a secondary meaning has been acquired, courts consider the following factors, none of which is dispositive: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc, 830 F.2d 1217, 1222 (2d Cir. 1987), overruled on other ground by Paddington Corp., 830 F.2d at 585.

In determining likelihood of confusion, courts apply a balancing analysis considering the following non-exclusive factors:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user

may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

Starbucks Corp., 588 F.3d at 115.

### *Affirmative Defense of Abandonment*

Even if a party demonstrates trademark infringement, "the alleged infringer may nevertheless prevail if it can establish the owner's prior abandonment of the mark." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 146 (2d Cir. 2007). A prima facie showing of abandonment may be established by evidence of the mark's nonuse for three consecutive years. See 15 U.S.C. § 1127. Such a period without use creates a statutory presumption of abandonment, which shifts "the burden of production to the mark owner to come forward with evidence indicating that, despite three years of non-use, it intended to resume use of the mark within a reasonably foreseeable time." ITC Ltd., 482 F.3d at 148. Absent a prima facie showing of abandonment, the party invoking the abandonment doctrine has the burden[2] of showing by preponderance of the evidence: "(1) non-use of the mark by the legal owner, and (2) lack of intent by that owner to resume use of the mark in the reasonably foreseeable future." Id. at 147.

The plaintiff does not contend that Spring Street abandoned its use of the mark "Spring

---

[2]  The Second Circuit's statement that, "[i]n the first place, abandonment, being a forfeiture of a property interest, should be strictly proved," Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980), appears to suggest that the affirmative defense of abandonment, in a trademark infringement case, should impose on a defendant a burden stricter than the usual burden of proof by a preponderance of the evidence. However, absent an authoritative holding that a stricter burden applies in this case, the Court will apply the preponderance of the evidence burden, typically required by courts to establish an affirmative defense. See Ins. Co. v. Newton, 89 U.S. 32, 34 (1874); but see Sparton Corp. v. United States, 89 Fed. Cl. 196, 208 (Fed. Cl. 2009) ("[W]hen invalidity [of a presumably valid patent] is raised as an affirmative defense in an infringement suit, the accused infringer bears the burden of proving facts which support a conclusion of invalidity by clear and convincing evidence.").

Street" for a period of three consecutive years or more; thus the statutory presumption of abandonment does not apply.  Where the party invoking the affirmative defense of abandonment contends that the nonuse of the mark by its owner was less than three consecutive years, the burden of persuasion by a preponderance of the evidence remains on that party to establish both elements of the abandonment defense.  See id.

The plaintiff failed to establish both elements of its affirmative defense of abandonment.  The plaintiff's entire argument on the affirmative defense of abandonment, that Spring Street "abandoned its use of the Spring Street mark when it ceased to use the mark and went out of business on April 29, 2011," is disputed.  The plaintiff's Local Civil Rule 56.1 statement neither mentions the "Spring Street" mark nor contains any facts supporting any inference about the use of the Spring Street mark or its abandonment.  It is undisputed that Spring Street ceased operation on April 29, 2011.  However, that undisputed fact does not lend itself to an inference that, by ceasing its operation, Spring Street abandoned its use of the Spring Street mark, and the plaintiff failed to present any evidence to establish Spring Street's nonuse of the "Spring Street" mark.  Moreover, the plaintiff failed to present any evidence to establish lack of intent by Spring Street to resume use of its mark in the reasonably foreseeable future.  The evidence in the record creates an issue of fact concerning Spring Street's intent to use its mark in the reasonably foreseeable future because Schor stated in his declaration, in opposition to the plaintiff's cross-motion, that Spring Street: (a) "still exists to this day as a legal entity and remains the owner of the 'Spring Street' name'"; (b) "retains the 'Spring Street' name as [an] asset which it may use in the future or sell to a third party"; and (c) "no decision had been made with respect to future use of the 'Spring Street' mark."  Accordingly, the plaintiff failed to carry its burden of establishing the affirmative defense of abandonment, and granting summary

judgment on that ground is not warranted.

*Whether the Mark Is Entitled to Statutory Protection*

The plaintiff contends that "the mark 'Spring Street' is a geographic term, designating a location in New York well-known for its historic affiliation with the garment industry" and, since "[g]eographic terms are not inherently distinctive," Spring Street "is required to establish that its mark has acquired secondary meaning in the minds of consumers."

> For purposes of trademark status . . . a phrase or term that is **descriptive of the geographic origin of a product** will not receive trademark protection absent proof of secondary meaning.   Conversely, **a geographic term** may enjoy trademark protection without a showing of secondary meaning when it is used in an arbitrary or suggestive manner, taking into account the nature of the goods or services at issue.
>
> Forschner Group, Inc. v. Arrow Trading Co., 30 F.3d 348, 353-54 (2d Cir. 1994) (emphases added).

The plaintiff failed to mention the "Spring Street" mark or any facts in connection with it in its Local Civil Rule 56.1 statement of undisputed facts.  The plaintiff's contention in its memorandum of law, that "the mark 'Spring Street' is a geographic term, designating a location in New York well-known for its historic affiliation with the garment industry" is unsupported by any evidence in the record.  Moreover, the plaintiff's assertion that, since the mark "Spring Street" is a geographic term, Spring Street "is required to establish that its mark has acquired secondary meaning in the minds of consumers" is erroneous.  Spring Street would be required to prove that its mark acquired a secondary meaning **only** if the "phrase or term . . . is descriptive of the geographic origin of a product."  Id. at 353.  The plaintiff presented no evidence and made no argument that "Spring Street" is a phrase or term descriptive of **the geographic origin of the defendants' products**, namely woven skirts and pants for women.  Nor did the plaintiff present any evidence or make any argument that the "Spring Street" mark was not used in an arbitrary or

suggestive manner.  See id. at 354.  Accordingly, since the plaintiff failed to show that the Spring Street mark is not entitled to statutory protection, granting summary judgment on this ground is not warranted.

Moreover, the plaintiff's contention that "there is no evidence that Jade used the Spring Street mark without [Spring Street's] permission" is not sufficient to satisfy the moving party's burden on summary judgment.  Schor stated, in his declaration in opposition to the motion, that precisely the opposite is the case, namely that the plaintiff "transformed its product line to now include woven products . . . by utilizing without permission [Spring Street's] trade name for a period of time."  Thus, at minimum, a genuine issue of material fact exists about whether the plaintiff used the Spring Street mark without permission.

### Common Law Unfair Competition and GBL § 360-l Counterclaims

To prevail on a common law unfair competition cause of action, "the plaintiffs must show that the defendants misappropriated the plaintiffs' labors, skills, expenditures, or good will and displayed some element of bad faith in doing so."  Abe's Rooms, Inc. v. Space Hunters, Inc., 38 A.D.3d 690, 692, 833 N.Y.S.2d 138, 140 (App. Div. 2d Dep't 2007).  "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."  GBL § 360-l.

The only argument made in the plaintiff's summary judgment motion with respect to the common law unfair competition and GBL § 360-l counterclaims is that they "should be dismissed for the same reasons as [the plaintiff's] second counterclaim under the Lanham Act." Moreover, the plaintiff asserts, GBL § 360-l does not provide for damages, only injunctive relief.

19

Given that the Court found the reasons for dismissing the defendants' Lanham Act counterclaim without merit, and the plaintiff did not proffer any other reason for dismissing the unfair competition and GBL § 360-l counterclaims, the plaintiff failed to sustain its burden of showing that the materials cited in its Local Civil Rule 56.1 statement or any other evidence in the record establishes that no genuine dispute respecting material facts concerning the common law unfair competition and GBL § 360-l counterclaims exists.  Therefore, granting summary judgment on these two counterclaims is not warranted.

### *GBL § 349 Counterclaim*

GBL § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service" are unlawful.  GBL § 349(a).  To establish a GBL § 349 claim, a plaintiff must show "that the conduct was consumer oriented" and that the "defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof."  Harmon v. Major Chrysler Jeep Dodge, Inc., 101 A.D.3d 679, 682, 955 N.Y.S.2d 357, 360 (App. Div. 2d Dep't 2012) (citation omitted).

The plaintiff contends that summary judgment is appropriate on the GBL § 349 counterclaim because neither Jade nor Spring Street sold its products to the public directly, and Spring Street "cannot prove that Jade's conduct is 'consumer oriented' or has a 'broader impact on consumers at large.'"  The undisputed facts, that Jade engaged in the business of producing clothing for sale to retail shops and Spring Street produced clothing for sale to retail shops and did not sell directly to the public, do not establish, without more, that Jade's conduct was not consumer oriented or that Jade did not engage in an act or practice that is deceptive or misleading in a material way, and the plaintiff does not make citation to any authority for or

20

point to any evidence in support of that proposition.  Thus, the plaintiff failed to establish that no genuine issue of material facts exists respecting the elements of the GBL § 349 counterclaim, namely, whether Jade's conduct was consumer oriented and misleading in any material way, resulting in an injury to the defendants.

***Conversion Counterclaim***

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96, 100 (2006).  The defendants asserted that Jade's "retention and use of samples, photographs, servers, customer information and other property, belonging to [Spring Street], constitutes a conversion."  The plaintiff contends that it is undisputed that: (a) Spring Street removed its samples and the rest of the property from the showroom on April 27 and 28, 2011; (b) Spring Street went out of business on April 29, 2011; (c) Jade changed the lock on the showroom after Spring Street vacated the premises and went out of business; (d) Jade did not hire Spring Street salespersons until after they were terminated by Spring Street; (e) no evidence exists that Jade made any sales using Spring Street' samples; and (f) Schor assigned the payment of certain invoices to Jade.

Cooper's declaration that she did not use Spring Street's "samples to obtain sales" after April 25, 2011 is not sufficient to support the plaintiff's contention that, after April 25, 2011, Jade did not make any sales using Spring Street samples.  Schor stated that, during his deposition, he testified that large retail customers, such as Rue 21 and West Seal, continued to receive invoices containing the "Spring Street" name from Jade, after Spring Street had ceased operations, and that the samples his son was looking for when he vacated the showroom space

Jade and Spring Street shared, could not have been removed because they were not there.  Schor stated that Jade developed a line of woven products, "remarkably similar to [Spring Street's] line," by using Spring Street's samples without authorization.  Thus, a genuine issue of fact exists concerning whether Jade used Spring Street's samples, if any, without permission. Accordingly, granting summary judgment on the conversion counterclaim is improper.

***Unjust Enrichment Counterclaim***

Although the plaintiff's notice of motion for summary judgment does not include the defendants' counterclaim for unjust enrichment, the plaintiff makes an argument in its memorandum of law contending it should be dismissed because it is duplicative of the defendants' breach of contract claim.  This argument is baseless because the defendants' counterclaim asserts that "Jade has entered into sales with various third parties for their purchase of goods represented by [Spring Street's] samples and has had manufactured product based upon these samples, none of which products [sic] covered by the terms of the Agreement."  Since the unjust enrichment counterclaim seeks damages for the plaintiff's alleged sales outside the scope of the parties' agreement, it is not duplicative of the defendants' breach of contract counterclaim. Furthermore, the plaintiff's contention that the unjust enrichment counterclaim should be dismissed, because of the same "undisputed evidence" on which the conversion claim should be dismissed, is rejected because the Court has found that the evidence presented in connection with the conversion counterclaim is not undisputed.  Accordingly, summary judgment is not warranted on the unjust enrichment counterclaim.

## CONCLUSION

For the foregoing reasons: (1) the defendants' motion for partial summary judgment on the plaintiff's claim for breach of fiduciary duty against Schor and Behar, in their individual

capacities, Docket Entry No. 34, is granted; and (2) the plaintiff's motion for summary judgment on counterclaims two, three, four, five, six and seven, Docket Entry No. 38, is denied.

Dated:  New York, New York
        February 11, 2013

SO ORDERED:

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

23